UNITED STATES DISTRICT
COURTSOUTHERN DISTRICT OF FLORIDA

CASE NO.

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MANNY J. SHULMAN and | ) |
| DAVID K. HIRSCHMAN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT**

Plaintiff Securities and Exchange Commission alleges as follows:

I.      **INTRODUCTION**

1.      The Commission brings this action to enjoin Defendants Manny J. Shulman, a *de facto* principal of Caribbean Pacific Marketing, Inc. ("Caribbean Pacific" or the "Company"), and David K. Hirschman, his business associate, from violating the registration, antifraud, and broker-dealer registration provisions of the federal securities laws in connection with their unregistered sale of securities of Caribbean Pacific, a purported sun-care and skin-care products start-up company.

2.      Caribbean Pacific's S-1 registration statement filed with the Commission, which was declared effective in August 2012, failed to disclose that Shulman, a securities fraud recidivist, controlled the Company's day-to-day operations and made substantive decisions for the Company.

3.      The Company's S-1 registration statement also failed to disclose the managerial role of William J. Reilly – a securities fraud recidivist and disbarred attorney – in the Company.

4.      Additionally, from no later than June 2012 through October 2012, Shulman and Hirschman raised approximately $271,500 from 18 investors in various states, who purchased shares of Caribbean Pacific stock in a private, unregistered offering.  Unbeknownst to these investors, the Defendants misappropriated and misused almost all of the money they raised.

5.      As a result of the conduct alleged in this Complaint, Defendants Shulman and Hirschman violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), 77q(a); and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, and Hirschman violated Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).  Unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

6.      The Commission therefore respectfully requests the Court enter an order: (i) permanently restraining and enjoining Defendants from violating the federal securities laws; (ii) directing Defendants to pay disgorgement with prejudgment interest; (iii) directing Defendants to pay civil money penalties; and (iv) imposing a penny stock bar against Hirschman.

**II.     DEFENDANTS**

7.      Shulman, age 54, is a resident of Boca Raton, Florida.  During the relevant time period, he was the *de facto* executive officer and control person of Caribbean Pacific.  In April 2009, the Commission filed a civil action against Shulman based on his involvement in a series of unregistered distributions of penny stocks and disseminating false and misleading information to facilitate the unregistered distribution of one of those stocks.  *SEC v. Frank C. Calmes, et al.*,

- 2 -

09-80524-CIV-ZLOCH (S.D. Fla., Apr. 2009). In July 2011, following a jury trial in that case, Shulman was permanently enjoined and penny stock and officer-and-director bars were entered against him based on his violations of the registration and antifraud provisions of the federal securities laws. Shulman was also ordered to pay disgorgement of $273,152 plus prejudgment interest of $95,633 and a civil penalty of $5,000.

8.      Hirschman, age 65, is a resident of Plantation, Florida. At various periods between May 1976 and June 2006, Hirschman was an associated person with six different broker-dealers.

### III.    RELATED ENTITIES AND INDIVIDUALS

9.      Caribbean Pacific was a Florida corporation based in Boca Raton, Florida. The company purported to be in the business of developing a line of all natural sun-care and skin-care products. Now defunct, Caribbean Pacific was administratively dissolved as a corporate entity in September 2013 by the State of Florida. Although Caribbean Pacific's securities were registered with the Commission pursuant to an S-1 registration statement filed in August of 2012, the effectiveness of that registration was subsequently suspended.

10.     Caribbean Pacific's stock was a "penny stock" as defined by the Exchange Act. At all times relevant to this action, the stock's shares traded at less than one dollar per share. During the same time period, Caribbean Pacific's stock did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Exchange Act. For example the Company's stock: (a) did not trade on a national securities exchange; (b) was not an "NMS stock," as defined in 17 C.F.R. §242.600(b)(47); (c) did not have tangible assets (*i.e.*, total assets less intangible assets and liabilities) in excess of $5,000,000; and (d) did not

- 3 -

have average revenue of approximately $6,000,000 for the last three years. *See* Exchange Act, Rule 3a51-1(g).

11.     Reilly, age 61, is a resident of Boca Raton, Florida. Reilly was a *de facto* executive officer of Caribbean Pacific. Reilly is a disbarred attorney previously licensed to practice law in the State of New York. In October 2009, Reilly was permanently enjoined and penny stock and officer-and-director bars were entered against him, by consent, in an unrelated prior Commission action, based on violations of the registration and antifraud provisions. *SEC v. Forest Resources Management Corp, et al.*, 09-CIV-00903-RAKOFF (S.D.N.Y., Oct. 15, 2009). In addition, pursuant to Rule 102(e)(3) of the Commission's Rules of Practice, Reilly was suspended from appearing or practicing before the Commission as an attorney with a right to reapply after three years. *In the Matter of William J. Reilly, Esq.*, Admin. Proc. File No. 3-13666 (Oct. 27, 2009). Subsequently, in January 2003, Reilly was permanently barred from appearing or practicing before the Commission as an attorney based on a district court's finding that he violated the 2009 Commission Order. In March 2013, Reilly pled guilty to securities fraud and other charges for defrauding seven Caribbean Pacific investors out of about $75,000. Reilly was sentenced to 21 months in prison and ordered to pay full restitution to the Caribbean Pacific investors he defrauded. *U.S. v. Reilly*, Case No. 13-20097-CR-COOKE (S.D. Fla., Mar. 2013).

## IV.     JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), 20(g), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), 77t(g), and 77v(a); and Sections 21(d)(1) and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d)(1) and 78aa(a).

13.     The Court has personal jurisdiction over Defendants and venue is proper in this District because, among other things, the Defendants reside in this District and because they

- 4 -

transacted business in this District and participated in the offer or sale of securities in this District. In particular, many of the acts and transactions constituting the violations alleged in this complaint occurred in this District. Venue is also proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the Commission's claims occurred here.

14.     In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## V.     DEFENDANTS' FRAUDULENT REGISTRATION SCHEME

### A.     Caribbean Pacific's Formation and Registration

15.     Shulman and Reilly, both securities fraud recidivists, formed Caribbean Pacific in January 2012. Although Caribbean Pacific's Form S-1 registration statement stated that the company intended to market "all-natural sun care and skin care products," Shulman and Reilly later told investors that the Company would serve as a public shell to engage in a reverse merger with another Florida-based company called Dreamscapes International Properties, Inc. ("Dreamscapes"). Dreamscapes purportedly had land holdings in Belize that it planned to develop into a vacation and retirement community.

16.     Although two other individuals were appointed as corporate officers and directors of Caribbean Pacific, Shulman and Reilly actually controlled the Company and ran it on a day-to-day basis.

17.     On March 9, 2012, Caribbean Pacific filed a Form S-1 registration statement with the Commission, which it amended several times between March and August 2012. The company subsequently requested acceleration of its Form S-1, which was then declared effective

on August 29, 2012. Caribbean Pacific made its filings electronically via the Commission's EDGAR system.

18.　　According to Caribbean Pacific's registration statement and accompanying financial statements, the company had no assets of any significance or ongoing business operations. However, it sought to raise $150,000 through a self-underwritten offer and sale of up to 1 million shares of common stock at $0.15 per share, to conduct its business operations.

19.　　On October 23, 2012, the United States Attorney's Office for the Southern District of Florida filed criminal charges against Reilly alleging, among other things, he fraudulently sold Caribbean Pacific stock to seven investors, defrauding them of approximately $75,000.

**B.　　Caribbean Pacific's False and Misleading Form S-1 Registration Statement**

20.　　Caribbean Pacific's Form S-1 registration statement, which was filed with the Commission and available to potential investors, failed to disclose to potential investors that Shulman and Reilly, both securities fraud recidivists with penny stock and officer-and-director bars, were acting as *de facto* executive officers and control persons of the Company.

21.　　The S-1 registration statement listed two other individuals as the Company's officers and directors and as the only individuals who would sell the stock on behalf of Caribbean Pacific in the self-underwritten offering.

22.　　In fact, Shulman and Reilly began working on Caribbean Pacific's registration statement shortly after forming the company. They retained an attorney to be the company's securities counsel and an auditor to serve as Caribbean Pacific's outside auditor.

23.　　In addition to Reilly, Shulman was also a de facto executive officer and control person of Caribbean Pacific throughout the relevant time period.

24.     For example, Shulman was involved in or consulted about nearly every aspect of the drafting and filing of Caribbean Pacific's registration statement. In addition, Shulman opened Caribbean Pacific's bank account and he had signatory authority on the account. Notably, Shulman disclosed in the account opening documentation that he was a 70% owner of Caribbean Pacific. Shulman also provided the office space for Caribbean Pacific. He also had sole responsibility for distributing the company's stock and maintaining its shareholder list.

25.     After Reilly's arrest, Shulman arranged for the resignation of Caribbean Pacific's president and he drafted a board of director's resolution to that effect. During the remainder of 2012, Shulman continued to engage in business negotiations on behalf of Caribbean Pacific.

26.     For example, in late 2012, he attempted, unsuccessfully, to effectuate a reverse merger of Caribbean Pacific with a different company.

### C.     The Defendants' Unregistered, Fraudulent Offering and Misappropriation of Investor Funds

27.     From no later than June 2012 through October 2012, Shulman and Hirschman engaged in a private, unregistered offering of Caribbean Pacific stock, raising $271,500 from 18 investors located in various states.

28.     Shulman and Hirschman represented to investors that they were purchasing shares directly from the Company. Despite this, each of the investors in Caribbean Pacific signed a written agreement to purchase shares from Value Advisors, LLC ("Value Advisors"), an entity Hirschman owned and controlled.

29.     Schulman and Hirschman told investors that Caribbean Pacific would be conducting an IPO and would subsequently merge with Dreamscapes, a company that had a land development in Belize.

30. Both Shulman and Hirschman told investors that the proceeds from the stock sales would be used to further Dreamscapes' development or help take Caribbean Pacific public. Shulman and Hirschman never disclosed to investors that they would keep any portion of this money for themselves.

31. Shulman and Hirschman instructed the investors to wire their money to accounts held in the name of Value Advisors or Hemisphere Capital, LLC ("Hemisphere"), another entity Hirschman owned and controlled.

32. Instead of using investor money for expenses related to Caribbean Pacific's IPO and the business development of Dreamscapes, Shulman and Hirschman misappropriated most of the $271,500 raised from investors for their personal use.

33. Hirschman paid out a total of $96,925 to Shulman and one of Shulman's family members from the Value Advisors and Hemisphere's accounts.

34. Hirschman either transferred the remaining money to his and one of his family member's personal bank accounts or used it to pay for business or personal expenses, such as restaurants and entertainment bills.

35. In fact, the Defendants only spent approximately $2,200 on costs related to the Company's IPO or other legitimate business expenses.

**D.**     **Hirschman's Actions as An Unregistered Broker or Dealer**

36. Between June and October 2012, Hirschman solicited investors to invest in Caribbean Pacific, and raised $271,500 from 18 investors.

37. Hirschman discussed the investment with prospective investors and recommended that they purchase Caribbean Pacific stock.

38.     Hirschman also exercised control over investor funds by receiving investor funds into accounts he controlled.

39.     In the course of the offer and sale of Caribbean Pacific stock, Hirschman received transaction based compensation in the form of, among other things, misappropriated investor funds.

40.     Throughout the course of the offer and sale of Caribbean Pacific stock, Hirschman was not registered as a broker or associated with a registered broker-dealer.

## COUNT I

### Unregistered Sale of Securities in Violation
### of Sections 5(a) and 5(c) of the Securities Act

### (Against Both Defendants)

41.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

42.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions in Caribbean Pacific stock described in this Complaint, and no exemption from registration existed with respect to these securities and transactions.

43.     From no later than June 2012 through October 2012, Shulman and Hirschman, directly and indirectly: (a) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, as described herein, through the use or medium of a prospectus or otherwise; (b) carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy securities through the use or medium of any prospectus or otherwise, as described herein,

without a registration statement having been filed or being in effect with the Commission as to such securities.

44.     By reason of the foregoing, Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

### Unregistered Broker-Dealer in Violation of
### Section 15(a)(1) of the Exchange Act

#### (Against Hirschman)

45.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

46.     From no later than June 2012 through October 2012, Hirschman made use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities, while Hirschman was not registered with the Commission as a broker or dealer or while Hirschman was not associated with a broker or dealer registered with the Commission.

47.     By reason of the foregoing, Hirschman, directly and indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

## COUNT III

### Fraud in Violation of Section 17(a)(1) of the Securities Act

#### (Against Both Defendants)

48.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

49.     From no later than June 2012 through October 2012, Shulman and Hirschman, in the offer or sale of any securities by the use of any means or instruments of transportation or

communication in interstate commerce or by use of the mails, directly or indirectly knowingly, willfully or recklessly employed any device, scheme or artifice to defraud.

50.     By reason of the foregoing, Shulman and Hirschman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

**COUNT IV**

**Fraud in Violation of Section 17(a)(2) of the Securities Act**

**(Against Both Defendants)**

51.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

52.     From no later than June 2012 through October 2012, Shulman and Hirschman, in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly   obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

53.     By reason of the foregoing, Shulman and Hirschman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

**COUNT V**

**Fraud in Violation of Section 17(a)(3) of the Securities Act**

**(Against Both Defendants)**

54.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

55.     From no later than June 2012 through October 2012, Shulman and Hirschman, in the offer or sale of any securities by the use of any means or instruments of transportation or

communication in interstate commerce or by use of the mails, directly or indirectly engaged in transactions, practices and courses of business which operated or would have operated as a fraud or deceit upon the purchasers and prospective purchasers of such securities.

56.     By reason of the foregoing, Shulman and Hirschman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT VI

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

### (Against Both Defendants)

57.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

58.     From no later than June 2012 through October 2012, Shulman and Hirschman, directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud;

59.     By reason of the foregoing, Shulman and Hirschman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(a) of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(a).

## COUNT VII

### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

### (Against Both Defendants)

60.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

61.     From no later than June 2012 through October 2012, Shulman and Hirschman, directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly, willfully or recklessly made untrue statements of material facts and/or omitted

- 12 -

to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62.     By reason of the foregoing, Shulman and Hirschman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(b) of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(b).

<strong>COUNT VIII</strong>

<strong>Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act</strong>

<strong>(Against Both Defendants)</strong>

63.     The Commission repeats and realleges Paragraphs 1 through 40 of its Complaint.

64.     From no later than June 2012 through October 2012, Shulman and Hirschman, directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly, willfully or recklessly engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities.

65.     By reason of the foregoing, Shulman and Hirschman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(c) of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(c).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### I.

### Permanent Injunction

Issue a Permanent Injunction restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating: (i) Sections 5(a), 5(c) of the Securities Act; (ii) 17(a) of the Securities Act; and (iii) Section 10(b) and Rule 10b-5 of the Exchange Act.

Issue a Permanent Injunction restraining and enjoining Hirschman, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 15(a)(1) of the Exchange Act.

### II.

### Disgorgement

Issue an Order directing Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### III.

### Penalties

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## IV.

### Penny Stock Bar

Issue an Order, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), barring Hirschman from participating in any future offering of a penny stock.

## V.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VI.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action and over Defendants in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

September 3, 2015                By:  _____

James M. Carlson
Senior Trial Counsel
S.D. Fla. Court # A5501534
Telephone: (305) 982-6328
Facsimile: (305) 536-4154
E-mail: CarlsonJa@sec.gov

Trisha D. Sindler
Senior Counsel
Florida Bar # 0773492
Telephone: (305) 982-6352
E-mail : FuchsT@sec.gov

- 15 -

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154